IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ADAM GARRETT GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-152 |
| | ) | |
| JASON MEDLIN, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Wheeler Correctional Facility ("WCF") in Alamo, Georgia, is proceeding *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because Plaintiff is proceeding IFP, his complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

### I.  BACKGROUND

Plaintiff names the following Defendants: (1) Jason Medlin, Warden at WCF; (2) Ron Day, Chaplain at WCF; and (3) Mrs. Hodges, "Chief" at WCF. (See doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Prior to his arrival at WCF on September 29, 2014, Plaintiff had been incarcerated in prisons that provide "the Religious Diet (Restricted - Vegan or Kosher)." (Id. at 5; Ex. K, p. 1.) WCF, however, does not provide the restricted vegan diet, and Plaintiff lost eight pounds in

approximately two month because of his inability to eat a vegan diet. (Doc. no. 1, Ex. K, pp. 1, 2.) He was also unable to keep a Jewish Prayer Shawl that was mailed to him. (Id. at 3.) Since his arrival at WCF, Plaintiff has been unable to attend his preferred Jewish religious services, use his religious paraphernalia, and have a "clipper shave profile." (Doc. no. 1, pp. 5, 6.) Plaintiff also seeks to have his name changed to "Adam ben Ya'akov." (Id. at 6.)

Plaintiff wrote letters to Warden Medlin and Chaplain Day on October 2, 2014, and he spoke with Chief Hodges about his concerns on October 23, 2014. (Id. at 3; Ex. K, pp. 1, 2.) Although Plaintiff could not get his assigned counselor to sign a grievance on October 31, 2014, he was able to file a grievance about this restricted vegan diet on November 19 or 20, 2014 with Counselor Wesley. (Doc. no. 1, p. 3; Ex. K, pp. 2-3.) Plaintiff signed the complaint in this case on December 2, 2014. (Id. at 6.)

## II. DISMISSAL FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

### A. The Exhaustion Requirement of the Prison Litigation Reform Act ("PLRA").

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the

2

administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### B. The Prison Grievance Procedure.

Because of the date of the events about which Plaintiff complains, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on December 10, 2012. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The

---

[1] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(5). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date he receives the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

### C. Plaintiff's Failure to Exhaust.

Here, Plaintiff states that he turned in a grievance about his restricted vegan diet on either November 19 or 20, 2014. (Doc. no. 1, p. 3; Ex. K, p. 3.) The SOP allows for a forty-day response period from the time of submission of the original grievance. SOP IIB05-0001 §

4

VI(D)(7). Even if the Court were to assume that Plaintiff's grievance covered all the issues raised in the complaint and not just the issue of his diet, the case is still due to be dismissed because Plaintiff signed his complaint on December 2, 2014, less than two weeks after submission of his grievance. (See doc. no. 1, pp. 3, 6.) As explained above, the PLRA also requires "proper" exhaustion of the administrative process, including using the proper procedures and following the rules set out in the administrative process. Woodford, 548 U.S. at 90, 93. Therefore, Plaintiff's letter writing campaign and discussions with various prison officials prior to filing his grievance cannot be viewed as exhausting his administrative remedies.

Moreover, even if his original grievance had been rejected or the time for the Warden's response had passed, Plaintiff does not state that he appealed to the Central Office, as is permitted when an original grievance is rejected or the time for receiving a response has expired without the offender receiving a response. SOP IIB05-0001 §§ VI(E)(3)-(4). In order to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Additionally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of his complaint that Plaintiff failed to use all steps of the available grievance process prior to submitting the current complaint.[2] Therefore his complaint fails to state a claim upon which relief can be granted. See Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011)

---

[2]Exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215 (2007). Dismissal is nonetheless appropriate where, as here, the complaint allegations show that a prisoner's claims are barred by an affirmative defense. Id. at 14; see also Clark v. Georgia Pardons and Paroles Bd., 915 F.2d 636, 640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action"); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (finding that the district court properly dismissed complaint because the allegations in the complaint sufficed to establish that the plaintiff failed to exhaust his administrative remedies).

("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

## III. CONCLUSION

For the reasons set forth above, Plaintiff's complaint fails to state a claim upon which relief can be granted. Therefore, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 20th day of January, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA